Johnson J.
delivered the opinion of the Court.
The first objection raised on behalf of the prisoner, has not been alluded to here ; and more than six months having elapsed between the discharge of the prisoner, in pursuance of the pardon, and the warrant issued for his arrest, I presume there is. nothing in it, and that it was not intended to be relied on. And the case of Jeremiah Smith, decided in this Court, at December Term, 1829, (1 Bailey, 283.) is decisive of all the points raised in the second objection. Smith had been convicted of a felony, and was pardoned on condition of submitting to imprisonment for a considerable length of time, and then leaving the State, never to return : and it was held, upon very mature deliberation, and after a very full and able argument, that his returning into the State was a violation of the condition of the pardon, and subjected him to the original punishment.
The third proposition embraces a question of some difficulty, and upon which no case has been directly brought to bear. I ha,Ve laboured to deduce a conclusion, from general principles, favourable to the prisoner; but tny course of reasoning has led to a different result. In civil suits, whether founded on contract, or for tort, the universal rule is, that the liability of the defendant and the measure of the plaintiff’s right, must be resolved according to the laws existing át the time of the contract made, or the wrong done ; and according to the same principle, when an offence has been committed against the State, and the Legislature superadd accumulated punishment for the offence generally, the culprit will be punished according to the old law, for a different rule would give it an ex post facto operation. When, however, the new law repeals the law creating the offence, or substitutes a mitigated punishment, Sergeant Hawkins says, that the offender cannot be punished in respect of the former law. 1 Hawk. P. C. ch. 40, sec. 6. This is doubtless an exception to the general rule, founded on principles of humanity ; and it has been insisted, that the prisoner’s case falls within it. But, for the most obvious reasons, it can never apply to res judicata; for when once the final judgment is pronounced, the power of the G*urt over the subject matter is at an end: and all that *519 remains to be done, is the mere ministerial actfpf doing execution. This principle is plainly inculcated by Chief Justice Marshall, in the case of Yeaton v. the United States, 5 Cranch 281; where, in giving effect to the rule, that after the repeal, or expiration of a law, no penalty can be enforced, nor punishment inflicted, for violations of it whilst in force, he expressly proceeds on the ground,” that no definitive sentence had been pronounced. After final judgment, there is no means by which the Court can regain possession of the cause; and execution follows as a necessary consequence. If, for instance, the repealing law had intervened between the judgment, or sentence, and the execution ; there is no process by which the Court could, reverse, or modify the judgment. The sheriff has no power to inquire into the matter, and he must enforce it;, and if it be true, that the punishment is saved by the repealing statute, it would involve the absurdity of committing murder in due course of law.
Again, if the prisoner had escaped, and the new law had intervened before he was retaken, I cannot perceive the policy, or the justice, of suffering him to elude the punishment of one crime, by the perpetration of another ; and the escape itself is an offence.
All the difficulty in the case appears to me to have originated in not distinguishing between the judgment and the execution. The Court is not now called upon to pronounce judgment. That has already gone forth: and all that is required of the Court, is to fix a time, when that judgment shall be executed; an act involv-. ing the exercise of no judicial power. The prisoner was adjudged to suffer death as a felon on the 11th June, 1830, and as he has -violated the condition on which he was pardoned, he is remitted back-to that punishment. All that is required of the Court is, to fix a time when the sheriff shall execute it; or in other words to require him todo now, what'ought to have been done then.
In the course of my deliberations on this subject, it occurred to me, that it was. possible, that, under the circumstances, the Court would be justifiable in refusing to lend its aid in any manner whatever. But I have not been able to find any authority for it; and on more reflection, I am satisfied there is nothing in the idea ; for unless there was an authority to discharge, the *520 result would be perpetual imprisonment, a consequence almost as much to be avoided as the other alternative. We are all of1 opinion, however, that the circumstances furnish a proper case for the Executive clemency, and there is little doubt but that it , , will be extended to the prisoner.
The motion to reverse the order of the Circuit Court, for the discharge of the prisoner, is therefore granted.
Motion granted.